**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

SeedX Incorporated,
Plaintiff,
v.
Lincoln Strategy Group LLC, et al.,
Defendants.

No. CV-24-00933-PHX-SHD

**ORDER**

Pending before me is a Motion to Re-Transfer ("Motion") filed by Plaintiff SeedX Incorporated ("SeedX") (Doc. 56.) For the reasons explained below, the motion will be **denied**.

## I. BACKGROUND

SeedX brought this action in the United States District Court for the District of Wyoming against Lincoln Strategy Group, LLC, Fortified Consulting, LLC, and Nathan Sproul (collectively, the "Lincoln Defendants"), as well as Kanye 2020. (Doc. 1.) SeedX alleged that it performed e-commerce, digital consulting, and related services in support of Kanye 2020's presidential campaign but was not paid for that work. (Doc. 1 at 13–14.)

Kanye 2020 was a Wyoming mutual-benefit nonprofit corporation formed to support Kanye West's 2020 presidential campaign. (*Id.* at ¶ 3.) The Lincoln Defendants, which are incorporated in Arizona, worked in connection with the campaign. (*Id.* at ¶¶ 4–6, 17–19.) SeedX alleges that the Lincoln Defendants solicited its participation in the campaign, made assurances concerning payment for SeedX's work, and served as SeedX's

principal points of contact in connection with campaign-related matters. (*Id.* at ¶¶ 21–23.)

SeedX filed its original complaint on August 10, 2023, asserting claims for breach of oral or implied contract, breach of the implied covenant of good faith and fair dealing, quantum meruit/unjust enrichment, conversion, and fraud. (*Id.* at ¶¶ 1, 53–75.) The claims against the Lincoln Defendants arise from their alleged role in inducing SeedX to provide services connected with the Kanye 2020 campaign and their alleged failure to ensure that SeedX was paid. (*Id.* at ¶¶ 53–75.)

On October 18, 2023, Kanye 2020 moved to dismiss SeedX's claims under Rule 12(b)(6) for failure to state a claim. (Doc. 18.) The Lincoln Defendants moved to dismiss SeedX's claims under Rule 12(b)(2), for lack of personal jurisdiction. (Docs. 20, 21.) In a single order, the District Court of Wyoming ("Wyoming Court") granted Kanye 2020's motion, thereby dismissing all claims against Kanye 2020. (Doc. 36.) Finding that it lacked personal jurisdiction over the Lincoln Defendants, the Wyoming Court transferred the case to the District of Arizona under 28 U.S.C. § 1631.[1] (*Id*. at 27.)

SeedX appealed the Wyoming Court's dismissal of its claims against Kanye 2020, the finding that it lacked personal jurisdiction over the Lincoln Defendants, and the resulting transfer order. (Doc. 57 at 2.) With respect to the Lincoln Defendants, the Tenth Circuit concluded that it lacked appellate jurisdiction to review the transfer order because the claims against the Lincoln Defendants continued in the District of Arizona and appellate jurisdiction only extends to final decisions of the district courts. *SeedX, Inc. v. Lincoln Strategy Grp., LLC*, 158 F.4th 1166, 1171–73 (10th Cir. 2025). In so holding, the Tenth Circuit observed that SeedX could seek a retransfer in this court and, if that request were denied, obtain review in the Ninth Circuit. *Id*. at 1172.

SeedX now moves to re-transfer this action to the District of Wyoming. (Doc. 56.) Defendants have not opposed the Motion.

---

[1] The Wyoming Court concluded that transfer to the District of Arizona served the interests of justice because the Lincoln Defendants are at home in Arizona, SeedX's claims appeared to have potential merit, and a dismissal could result in a limitations bar. (Doc. 36 at 25–27.)

## II. LEGAL STANDARD

A transferee court has authority to consider a motion to re-transfer an action to the transferor court. *Posnanski v. Gibney*, 421 F.3d 977, 980–81 (9th Cir. 2005).[2] A party may obtain indirect review of an inter-circuit transfer order by moving for retransfer in the transferee court and, if retransfer is denied, appealing the denial in the transferee circuit. *Id.*; *see also SeedX*, 158 F.4th at 1172.

That review, however, is constrained by the law-of-the-case doctrine. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988). The law-of-the-case doctrine applies to rulings made by a coordinate court earlier in the same litigation, including a transferor court's transfer ruling. *Id.* at 816. Because the doctrine carries particular weight in the transfer context, a transferee court ordinarily may not revisit the transferor court's jurisdictional determination, unless that determination "was clearly erroneous and would work a manifest injustice." *Id.* at 817 (citing *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).) "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

I therefore do not evaluate whether the Wyoming Court may exercise personal jurisdiction over the Lincoln Defendants de novo. Rather, the pertinent question is whether the Wyoming Court clearly erred in concluding that SeedX failed to make a prima facie showing of specific personal jurisdiction over the Lincoln Defendants. If it did not clearly err, the jurisdictional inquiry ends, and I need not separately determine whether adherence would create a manifest injustice. *Christianson*, 486 U.S. at 816–17.

---

[2] Although Posnanski involved a § 1404(a) transfer, the same rule applies to transfers under 28 U.S.C. § 1631. *See Posnanski*, 421 F.3d 977, 981 n.2 (9th Cir. 2005) (stating that there is "no reason why a different rule would apply to transfers pursuant to other statutes, such as 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631").

## III. DISCUSSION

### A. The Wyoming Court's Personal Jurisdiction Ruling was Not Clearly Erroneous

The District of Wyoming concluded that it lacked general and specific personal jurisdiction over the Lincoln Defendants. (Doc. 36 at 19–25.) SeedX has not shown that either conclusion was clearly erroneous.

Personal jurisdiction may be general or specific. General jurisdiction permits a court to hear any claim against a defendant, regardless of whether the claim arises from the defendant's forum-related conduct. *Ford Motor Co. v. Montana Eighth Jud. District Court*, 592 U.S. 351, 358 (2021). That broad authority exists only where the defendant's affiliations with the forum are so continuous and systematic as to render the defendant "essentially at home" there. *Id.*; *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). For an individual, the paradigm forum for general jurisdiction is the individual's domicile. *Daimler*, 571 U.S. at 137. For a corporation, it is ordinarily the place of incorporation and principal place of business. *Id.*

Specific jurisdiction is narrower. It permits a court to hear claims that arise from or relate to the defendant's contacts with the forum. *Ford*, 592 U.S. at 358–59. To establish specific jurisdiction, the plaintiff must show that the defendant purposefully directed activities toward, or purposefully availed itself of the privilege of conducting activities in, the forum and that the claims arise out of or relate to those forum contacts. *Id.* at 359–63.

The Wyoming Court addressed both forms of personal jurisdiction. (Doc. 36 at 9.) It found that the Lincoln Defendants were not subject to general jurisdiction because they had not engaged in activity in Wyoming that would render any of them essentially at home there. (*Id.* at 19.) SeedX does not meaningfully challenge that conclusion in its Motion, (*see* Doc. 57), nor does the record provide a basis to conclude that Defendants are at home in Wyoming.

This dispute therefore concerns specific jurisdiction. SeedX contends that Defendants' alleged participation in the Kanye 2020 Campaign, which was formed and

based in Wyoming, supplied the requisite forum contacts. (*Id*. at 5–15.) The Wyoming Court concluded otherwise, holding that SeedX had not made a prima facie showing of either purposeful availment or a sufficient relationship between Defendants' alleged Wyoming contacts and SeedX's claims.[3] *See id.* at 19–24.

SeedX argues that the Wyoming Court erred in concluding that personal jurisdiction was not established because the Lincoln Defendants purposefully availed themselves of Wyoming by providing services to a campaign formed and based in Wyoming and that its claims arise from or relate to the Lincoln Defendants' alleged campaign-related conduct. (Doc. 57 at 7–11.)

**1. Purposeful Availment**

The Wyoming Court found that the Lincoln Defendants did not purposefully avail themselves of Wyoming. It reasoned that Kanye 2020, a Wyoming corporation, initiated the relationship by seeking the Lincoln Defendants' services for a national campaign, rather than the Lincoln Defendants initiating contact with Wyoming. (Doc. 36 at 20.) The court also found that nothing in the pleadings suggested the Lincoln Defendants ever physically entered Wyoming and that the Lincoln Defendants' relationship with Kanye 2020 represented the entirety of their connection to Wyoming. (*Id.* at 20–21.)

The Wyoming Court recognized that while "contractual obligations may create sufficient ties to establish jurisdiction, an out-of-state resident's contract with a resident of the forum state is insufficient, standing alone, to create personable jurisdiction." (*Id*. at 21 (citing *Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020)).) The Wyoming Court also found that the Lincoln Defendants "worked on a national campaign, that happened to be rooted in Wyoming—without further contacts with the forum." (*Id*. at 22.) It held that such contacts were "too attenuated to confer specific personal jurisdiction." (*Id*.) It further noted that, even if the Lincoln Defendants came to Wyoming, "[t]he mere fact that a party physically came to the forum state in furtherance

---

[3] Because SeedX's claims arise from an alleged contract, I apply a "purposeful availment" framework, rather than the "purposeful direction" framework used for intentional torts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

of a business transaction does not compel the conclusion that minimum contacts are satisfied." (*Id*. at 21 n.14 (citing *G&G Int'l, LLC v. Camsing Co., LLC*, 2010 U.S. Dist. LEXIS 11194, at *9 (D. Colo. Feb. 9, 2010).))

SeedX argues that the Lincoln Defendants purposefully availed themselves of Wyoming by serving as integral participants in the Kanye 2020 campaign, a campaign formed and based in Wyoming. (Doc. 57 at 7–11.) SeedX emphasizes the Lincoln Defendants' alleged role in soliciting SeedX's work, making payment-related representations, managing campaign matters, and receiving payments from Kanye 2020. (*Id*.) Despite conceding that the Lincoln Defendants may have never personally traveled to Wyoming, SeedX argues that the Lincoln Defendants' voluntary decision to work for a Wyoming campaign created sufficient contacts with Wyoming. (*Id*. at 10.)

SeedX's allegations may support a competing characterization of the Lincoln Defendants' relationship with Kanye 2020. But I need not determine whether that competing view would be preferable to the Wyoming Court's conclusion, or whether I would have accepted it if I was considering the question in the first isntance. Under *Christianson*, the pertinent question is whether the Wyoming Court's conclusion was clearly erroneous. 486 U.S. at 819. It was not. The Wyoming Court could plausibly determine that the Lincoln Defendants' work for a national campaign with a Wyoming-organized entity did not, without more, establish purposeful availment of Wyoming. I therefore find that the Wyoming Court's conclusion on purposeful availment was not "clearly erroneous."

**2. Relationship Between Defendants' Contacts and SeedX's Claims**

The Wyoming Court separately held that SeedX had not established that its claims arose out of or related to the Lincoln Defendants' alleged Wyoming contacts. (Doc. 36 at 23–24.) The Wyoming Court recognized that SeedX could satisfy but-for causation because, absent the Lincoln Defendants' alleged involvement with Kanye 2020 and their alleged solicitation of SeedX, SeedX would not have performed services for the campaign. (*Id*. at 24.) But the Wyoming Court held that SeedX had not shown the closer nexus

arguably required by the governing framework in the Tenth Circuit because SeedX had not identified a Wyoming contact relevant to the merits of its claims. (*Id.*) It therefore concluded that the claims did not arise out of the Lincoln Defendants' activities in Wyoming. (*Id.*)

SeedX contends that the Wyoming Court improperly imposed a strict proximate-cause requirement. (Doc. 57 at 11–15.) SeedX maintains that its claims sufficiently relate to the Lincoln Defendants' Wyoming contacts because the alleged payment representations, services, and nonpayment all concerned a campaign formed and based in Wyoming. Relying principally on *Ford Motor*, SeedX argues that specific jurisdiction does not always require a strict causal relationship between the defendant's forum contacts and the plaintiff's claims. (*Id.* at 12 (citing *Ford Motor*, 592 U.S. at 362).)

In *Ford*, the Supreme Court held that Montana and Minnesota could exercise specific jurisdiction over Ford in products-liability actions involving accidents in those States. *Id.* at 354–56. Ford extensively advertised, sold, and serviced the relevant vehicle models in each forum, although the particular vehicles involved had been designed, manufactured, and initially sold elsewhere. *Id.* The Supreme Court held that jurisdiction was proper because Ford had deliberately served the market for the same products that allegedly injured residents in the forum States. *Id.* at 365.

SeedX is correct that *Ford* rejects a categorical rule under which proximate causation is invariably required. (*See* Doc. 57 at 1–2.) *Ford*, 592 at 362 ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do."). But *Ford* does not establish that the Wyoming Court's conclusion was clearly erroneous. The Wyoming Court could plausibly distinguish *Ford*, however. In that case, Ford extensively advertised, sold, and serviced the same vehicle models in the forum States, and the suits concerned accidents occurring in those States involving those products. *Id.* at 365–66.

SeedX's claims, by contrast, concern alleged payment representations and alleged nonpayment for digital and e-commerce services that have nothing to do with Wyoming.

(Doc. 1 at 1.) SeedX does not identify allegations that the Lincoln Defendants made the relevant representations in Wyoming, negotiated an agreement in Wyoming, performed the relevant services in Wyoming, or directed the allegedly wrongful conduct toward Wyoming residents. (*See generally id.*) The Wyoming Court could therefore plausibly distinguish the substantial, systematic forum activity by the defendant in *Ford* from the allegations here: a nonresident defendant's work in connection with a national political campaign that happened to be organized in Wyoming.

I need not independently choose between SeedX's interpretation of the relevant jurisdictional allegations and the Wyoming Court's interpretation. The Wyoming Court's conclusion had a reasonable basis in the pleadings and governing law, and it was therefore not clearly erroneous.[4]

### 3. Fair Play and Substantial Justice

Because the Wyoming Court concluded that SeedX had not established the threshold minimum-contacts requirements, it did not reach whether exercising jurisdiction would otherwise comport with traditional notions of fair play and substantial justice. (Doc. 36 at 24–25.) SeedX does not advance a distinct argument that the Wyoming Court was required to reach the reasonableness inquiry. Its Motion instead maintains that the Lincoln Defendants' alleged campaign-related contacts were sufficient to establish purposeful availment and relatedness. (Doc. 57 at 7–15.)

The Wyoming Court's decision not to reach the reasonableness inquiry was not clearly erroneous. The fair-play-and-substantial-justice inquiry becomes relevant only after the plaintiff establishes the necessary minimum contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Because the Wyoming Court plausibly concluded that SeedX had not shown purposeful availment or a sufficient relationship between the claims and the asserted Wyoming contacts, it could end the inquiry without separately considering reasonableness.

---

[4] Even if the Wyoming Court's proximate causation analysis was inconsistent with Ford, and clearly erroneous, I would still need deny the Motion because the Wyoming Court independently relied on its purposeful-availment holding, (Doc. 36 at 23,)—a conclusion SeedX has not shown to be clearly erroneous. *See supra* Section III(A)(1).

**B. Adherence to the Transfer Order Would Not Work a Manifest Injustice**

Because I have found no clear error, I need not reach *Christianson's* manifest injustice prong. But even assuming SeedX could show clear error by the Wyoming Court, it has not shown that adherence to the ruling would work a manifest injustice.

After determining that it lacked personal jurisdiction over the Lincoln Defendants, the Wyoming Court transferred the claims against them to this District under 28 U.S.C. § 1631. (Doc. 36 at 25–27.) The Wyoming Court concluded that transfer served the interests of justice because dismissal could expose SeedX's claims to a limitations defense, the claims appeared potentially meritorious, and Arizona was likely the appropriate forum given the Lincoln Defendants' residence here. (*Id.*)

SeedX argues, in substance, that the transfer caused an injustice because it could not obtain immediate appellate review of the Wyoming Court's transfer ruling. (Doc. 57 at 2–3.) SeedX also argues that the action belongs in Wyoming because it arises from a Wyoming-based campaign and because the Wyoming Court's personal-jurisdiction ruling was erroneous. (*Id.* at 5–15.)

SeedX has not shown that adherence to the transfer order would create a manifest injustice. The Wyoming Court's transfer did not dismiss SeedX's claims against the Lincoln Defendants or leave SeedX without a forum. Instead, those claims remain pending in this District, where personal jurisdiction over the Lincoln Defendants is undisputed. Nor has SeedX been denied a meaningful avenue to obtain review. The Tenth Circuit specifically recognized that SeedX could seek retransfer in this court and could obtain review in the Ninth Circuit if retransfer were denied. *SeedX*, 158 F.4th at 1172. The absence of immediate appellate review from an interlocutory transfer order, standing alone, does not amount to manifest injustice.

Finally, retransfer also would not revive the claims dismissed against Kanye 2020. The Wyoming Court dismissed those claims; it did not transfer them. (Doc. 36 at 27.) Accordingly, returning the remaining claims against the Lincoln Defendants to Wyoming would not restore Kanye 2020 to the case or alter the dismissal ruling. Retransfer would

instead return the claims against the Lincoln Defendants to a court that has already determined it lacks personal jurisdiction over them, invite additional threshold litigation, and further delay resolution of the merits.

## IV. CONCLUSION

The Wyoming Court's determination that it lacked personal jurisdiction over the Lincoln Defendants was not clearly erroneous. SeedX has also failed to establish that adherence to the resulting transfer order would work a manifest injustice. I therefore decline to retransfer this action.

Accordingly,

**IT IS ORDERED denying** SeedX's Motion to Re-Transfer, (Doc. 56).

Dated this 28th day of September, 2026.

Honorable Sharad H. Desai
United States District Judge